UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kenneth Lovette Young, #323182, | ) | C/A No. 5:15-cv-00637-JFA-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Kenneth Lovette Young ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("Report") on Respondent's Motion for Summary Judgment and Return. ECF Nos. 23, 24. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 25. Petitioner filed a Response in opposition to Respondent's Motion. ECF No. 28. Respondent did not file a reply to Petitioner's Response. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.      Procedural History

Petitioner is currently incarcerated at McCormick Correctional Institution, part of the South Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. On June 14, 2007, a York County Grand Jury indicted Petitioner on one count each of armed robbery, entering a bank

with intent to steal, kidnapping, assault and battery of a high and aggravated nature, possession of a firearm during the commission of a violent crime, and conspiracy to commit armed robbery. App. 721-32.[1] On July 23 through July 26, 2007, a jury trial was conducted before Honorable Judge John C. Hayes, III ("the trial court") with the State of South Carolina represented by Solicitor Kevin Brackett and Assistant Solicitor E. B. Springs, IV and with Petitioner represented by Attorney Phillip Jamieson ("trial counsel"). App. 1.[2] The jury convicted Petitioner on all the charges and the trial court imposed a life-without-parole sentence under the South Carolina recidivist statute, S.C. Code Ann. §17-25-45. App. 638-39, 646.

South Carolina Commission on Indigent Defense Appellate Defender LaNelle C. Durant ("Appellate counsel") filed a timely direct appeal from the convictions and sentence on Petitioner's behalf. Appellate counsel filed a final brief on December 14, 2008, raising the following points on appeal:

> 1. Did the trial court err in denying appellant's motion to sever his trial from that of his co-defendant when the defenses were antagonistic to each other, his co-defendant was pro se at trial, and appellant could not cross-examine his co-defendant on trial with him?

> 2. Did the trial court err by admitting into evidence the items found on the ground near the getaway car when there was not a sufficient nexus of the items to appellant?

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF Nos. 24-1, 24-2, 24-3.

[2] Evidence showed that the Bank of York, in York, South Carolina was robbed on December 22, 2006. Petitioner and a pro se co-defendant, Mr. Porter, were tried jointly. During the trial, testimony from at least two witnesses (Petitioner's former co-defendants Ms. Laws and Mr. Jones) and certain physical evidence seized from a vehicle in which Petitioner was apprehended arguably connected Petitioner and his pro se co-defendant to the bank robbery. *See* App. 566-615 (closing arguments discussing the evidence before the jury). Both Petitioner and his pro se co-defendant claimed that they were not involved in the robbery and had no knowledge about it. They each claimed that they had been picked up after the robbery was over by the driver of the car in which the proceeds of the robbery were found. App. 503-37.

ECF No. 24-4 at 4. The State filed its answer brief on November 25, 2008. ECF No. 24-5. On November 5, 2009, the South Carolina Court of Appeals issued a two-paragraph unpublished opinion affirming Petitioner's convictions and sentence. ECF No. 24-6; *State v. Young*, No. 2009-UP-505 (S.C. Ct. App. Nov. 5, 2009). The remittitur was sent to the York County Clerk of Court on November 23, 2009. ECF No. 24-7.

Petitioner filed a post-conviction relief ("PCR") application in the York County Court of Common Pleas on August 17, 2010, App. 652-80, and an amended PCR application on May 23, 2011, App. 681-86. Petitioner raised the following four issues for PCR relief:

> [1.] Trial counsel was ineffective during trial when he failed to lodge a proper objection to preserve[] the issue of severance for appellate review, which denied the Applicant due process of law.

> [2.] Trial counsel was ineffective for failing to object to the trial judge's jury instructions that allowed the jury to disregard the prior convictions of a prosecution witness in assessing her credibility, which denied the Applicant due process of law.

> [3.] Counsel was ineffective during trial for failing to object to the improper conduct of the solicitor which consisted of poisoning the minds of the jurors in his opening statements, bolstering the state's witnesses and making improper remarks about the Applicant and his co-defendants in his closing argument, counsel was also ineffective for failing to move for curative instructions or a mistrial, which denied the Applicant due process of law.

App. 662-78.

> [4.] Trial counsel was ineffective for failing to request a charge on third party guilt after direct and circumstantial evidence had been given on that issue during the trial, which was prejudicial to Applicant and denied him due process of law.

App. 683; *Young v. State*, No. 2010-CP-46-3470. After the State filed its Return to the PCR application on February 16, 2011, App. 689-92, an evidentiary hearing was held October 11, 2011 in York, South Carolina before the Honorable Judge Paul M. Burch ("the PCR court"). Attorney Charles T. Brooks, III ("PCR counsel") represented Petitioner and Assistant Attorney

General Matthew J. Friedman represented the State at the hearing. App. 693. Petitioner and trial counsel testified at the hearing. App. 696-711. The PCR court issued an order dated February 6 and filed February 9, 2012 dismissing the PCR application. Neither party to this habeas case disputes that the PCR court's order accurately summarizes the testimony provided by the two witnesses at the PCR hearing. Thus, because the relevant portion of that order is quoted verbatim below, it is unnecessary for this court to provide a separate summary of the testimony given at the PCR hearing in this Report. Some parts of the transcripts of both Petitioner's trial and his PCR hearing will be discussed as necessary in connection with discussion of Petitioner's Grounds for federal habeas relief. The PCR court's order contains the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

The Applicant testified that he was at Bojangles waiting on a check from his employer at the time of the robbery. He testified that co-defendant Laws dropped him off at Bojangles and the two other co-defendants drove up in a Thunderbird with an unknown male and got into the car with Ms. Laws. He asserted that he got back into the car with the three co-defendants after they came back, but he was not present for the bank robbery. Applicant testified that he told this information to counsel. Applicant acknowledged that he testified at trial and was able to tell his version of the facts at that time. He testified that he described the unknown man in the Thunderbird to counsel. Applicant testified that counsel sent his investigator to get the videotape from Bojangles, but the tapes are destroyed after 90 days. He asserted that counsel failed to request a charge on third party guilt, failed to preserve the issue of severance for appeal, and failed to object to the State's closing argument.

Trial counsel testified that he met with Applicant six or seven times and discussed the elements of the offenses with him in great detail. Counsel testified that he and Applicant discussed the defense that Applicant was at Bojangles

during the robbery, but Applicant could not give counsel the name of the employer that Applicant was allegedly meeting at Bojangles. He testified that Applicant described the man in the Thunderbird as a muscular, tall, black male. Counsel asserted that Applicant and co-defendant Porter did not have opposing defenses or accuse one another of committing the crime. Applicant claimed that he was not there and Mr. Porter claimed that he got out of the car at a different location and was not present for the robbery. Counsel testified that he was able to cross-examine the two co-defendants who testified against Applicant at trial.

Counsel testified that the State made a plea offer for thirty (30) years. He contended that he communicated the offer to Applicant, and it was Applicant's decision to reject the offer. Counsel testified that he and Applicant discussed the LWOP notice prior to trial. He testified that he sent his investigator to Bojangles, and the surveillance tape had been disposed of and none of the employees remembered Applicant. He testified that a witness from the bank drive-thru followed the robbers' car from the bank to Carowinds Boulevard and then the police picked up the chase and followed the car into North Carolina, and the witness indicated that the car never stopped at Bojangles. Counsel testified that the solicitor referred to the defendants as clowns in his closing argument, and counsel did not see the comment as objectionable or improper. He testified that he did not request a charge on third party guilt, but he did request a charge on alibi. Counsel asserted that he made a motion for severance, which was denied.

## Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant

such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

This Court finds that Applicant's testimony is not credible while also finding that trial counsel's testimony is credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, and possible defenses or lack thereof.

Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that counsel made a motion for a severance, which was denied, and properly preserved the record for appeal. Criminal defendants who are jointly tried are not entitled to separate trials as a matter of right. Hughes v. State, 346 S.C. 554, 552 S.E.2d 315 (2001) (citing State v. Dennis, 337 S.C. 275, 523 S.E.2d 173 (1999)). In this case, Applicant and co-defendant Porter did not present mutually antagonistic defenses and did not accuse each other of committing the crime. Nonetheless, counsel made the motion of [sic] Applicant's behalf.

This Court finds that counsel was not ineffective for failing to request a charge on third party guilt. In State v. Gregory, 198 S.C. 98, 16 S.E.2d 532 (1941), the Supreme Court of South Carolina set the standard for issues of third party guilt in South Carolina. The Court in Gregory found that "evidence offered by the accused as to the commission of the crime by another person must be limited to such facts that are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.["] Gregory, 16 S.E.2d at 534. Here, counsel had no basis to request to charge on third party guilt. Counsel did request a charge on alibi, and Applicant testified that he was at Bojangles during the robbery, but Applicant was unable to produce any witnesses who could verify his alibi.

This Court finds that counsel was not ineffective for failing to object to the State's closing argument. This Court agrees with trial counsel that the comments were not improper or objectionable. Counsel had no basis to object to the State's closing argument.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u>, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

### **All Other Allegations**

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

### **CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial or sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

ECF No. 24-8; *see also* 715-19 (copy of order missing last page). Petitioner appealed the denial

of PCR through Deputy Chief Appellate Defender Wanda H. Carter of the South Carolina

Commission on Indigent Defense, Division of Appellate Defense ("PCR appellate counsel").

PCR appellate counsel submitted a *Johnson* petition[3] for writ of certiorari to the Supreme Court

of South Carolina on October 31, 2012, raising the following issue:

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for appointed appellate counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from

> Trial counsel erred in advising petitioner to accept the state's thirty-year plea offer in order to avoid life imprisonment sans parole without adding a warning that the state's evidence against him was overwhelming because if petitioner [had] known that being convicted and receiving a sentence of life without parole were surely certainties in the event of trial, then he would have accepted the plea offer and received a more lenient sentence in the case.

ECF No. 24-9 at 3; *Young v. State*, No. 2012-208012 (S.C.). The petition was initially denied on February 6, 2013, ECF No. 24-10; however, the remittitur was recalled so that Petitioner could submit a pro se supplemental brief. ECF Nos. 24-11, 24-12, 24-13. Petitioner raised the following five issues for review in his pro se brief, quoted verbatim:

Issue 1

TRIAL COUNSEL WAS INEFFECTIVE DURING TRIAL WHEN HE FAILED TO LODGE A PROPER OBJECTION TO PRESERVE THE ISSUE OF SEVERANCE FOR APPELLATE REVIEW, WHICH DENIED THE APPLICANT DUE PROCESS OF LAW.

Issue 2

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL JUDGE'S JURY INSTRUCTIONS THAT ALLOWED THE JURY TO DISREGARD THE PRIOR CONVICTIONS OF A PROSECUTION WITNESS IN ASSESSING HER CREDIBILITY, WHICH DENIED THE APPLICANT DUE PROCESS OF LAW.

Issue 3

COUNSEL WAS INEFFECTIVE DURING TRIAL FOR FAILING TO OBJECT TO THE IMPROPER CONDUCT OF THE SOLICITOR WHICH CONSISTED OF POISONING THE MINDS OF THE JURORS IN HIS OPENING STATEMENTS, BOLSTERING OF STATE'S WITNESSES AND MAKING IMPROPER REMARKS ABOUT THE APPLICANT AND HIS CO-DEFENDANTS IN HIS CLOSING ARGUMENT, COUNSEL WAS ALSO INEFFECTIVE FOR FAILING TO MOVE FOR CURATIVE INSTRUCTIONS OR A MISTRIAL, WHICH DENIED THE APPLICANT DUE PROCESS OF LAW.

Issue 4

---

representation.

COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A STATE'S WITNESS'S TESTIMONY TO AN OUT OF COURT DECLARATION MADE BY A NON-TESTIFYING WITNESS, WHICH DENIED THE PETITIONER THE RIGHT TO CONFRONT THIS WITNESS, AND WAS A DENIAL OF DUE PROCESS OF LAW.

Issue 5

COUNSEL'S PERFORMANCE WAS CONSTITUTIONALLY DEFICIENT FOR FAILING TO INDEPENDENTLY INVESTIGATE AND LOCATE A WITNESS WHERE THE MISSING WITNESS WAS OBSERVED AT THE ALLEGED BANK ROBBERY BY THE STATE'S REPLY WITNESS, WHICH DENIED PETITIONER DUE PROCESS OF LAW.

ECF No. 24-13 at 7-15. On November 22, 2013, the Supreme Court of South Carolina transferred the appeal to the state Court of Appeals for a final ruling. ECF No. 24-14. On November 18, 2014, the Court of Appeals issued an order denying the petition for certiorari without written analysis of any issue and relieving PCR appellate counsel from representation. ECF No. 24-15. The remittitur was issued on December 4, 2014. ECF No. 24-16.

II.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus now under review, quoted verbatim:

1. Trial counsel was ineffective during trial when he failed to lodge a proper objection to preserve the issue of severance for appellate review, which denied the Applicant due process of law.

2. Trial counsel was ineffective for failing to object to the trial judge's jury instructions that allowed the jury to disregard the prior convictions of a prosecution witness in assessing her credibility, which denied the Petitioner due process of law.

3. Counsel was ineffective during trial for failing to object to the improper conduct of the solicitor which consisted of poisoning the minds of the jurors in his opening statements, bolstering of State's witnesses and making improper remarks about the Petitioner and his co-defendants in his closing argument, counsel was also ineffective for failing to move for curative instructions or a mistrial, which denied the Petitioner due process of law.

ECF No. 1-1 at 1 (Petitioner did not list his Grounds on the form that he used for his § 2254 Petition).

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-

court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b. Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari

and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises an ineffective-assistance-of-counsel claim in a § 2254 habeas petition that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state

courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>  (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>  (B)   (i) there is an absence of available State corrective process; or
>
>      (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires

15

that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of a criminal conviction, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for federal habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural

bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance,

the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. Pursuant to *Martinez v. Ryan*, an error by a prisoner's

post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S. Ct. 1309, 1318–1319 (2012).

### 3.     Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

### III.     Analysis

A.     Procedurally Barred Claim: Ground Two: Trial counsel was ineffective for failing to object to the trial judge's jury instructions that allowed the jury to disregard the prior convictions of a prosecution witness in assessing her credibility, which denied the Petitioner due process of law.

#### 1. The Parties' Contentions

Respondent contends that Petitioner's Ground Two is procedurally barred because it "was raised to but not ruled upon by the PCR judge." ECF No. 24 at 11. Petitioner acknowledges that, even though this issue was raised in his PCR application and in his own testimony during the PCR hearing, his PCR counsel did not inquire about it at all during his questioning of trial counsel and the PCR court did not discuss it in its order. ECF No. 28 at 5. Petitioner asserts that this court should excuse any procedural default arising from the PCR court's failure to discuss the issue, which he argues is a substantial one, *id*. at 5-7, because the PCR court's failure "is no

fault of the Petitioner." *Id.* at 8. Citing *Martinez v. Ryan*, 132 S. Ct. 1309, Petitioner contends any procedural default of this claim of ineffectiveness of trial counsel was caused by ineffective assistance of PCR counsel. *Id.*

2.     Applicable Law

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. A habeas petitioner must properly present his issues for the required consideration utilizing the proper procedures to do so under state law and has the burden of proving to a federal habeas court that he did so. *See Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994) ("Meaningful exhaustion is that which accords with the state's chosen procedural scheme."); *see also Smith v. Murray*, 477 U.S. at 533 ("Consistent with our earlier intimations . . . a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 124-29 (1982) (petitioner must prove cause and prejudice to avoid procedural bypass of jury-instruction issue not preserved by contemporaneous objection). Under South Carolina law, a PCR court is statutorily required to make findings of fact and conclusions of law in its final order on all issues properly presented to it for consideration. S.C. Code § 17-27-80 ("The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented."). The South Carolina Supreme Court has held that in situations where a PCR court has not made the required findings and conclusions with regard to a particular issue, that issue will not thereafter be reviewable by a state appellate court unless the petitioner's PCR counsel filed a motion to alter or amend the final judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to bring the omission to the PCR court's attention. *Marler v. State*, 653 S.E.2d at 267; *see* John H. Blume &

Emily C. Paavola, *A Reintroduction: Survival Skills for Post-Conviction Practice in South Carolina*, 4 Charleston L. Rev. 223, 270 (2010) ("a Rule 59(e) motion may also be used when the order contains an erroneous finding of fact, a misapplication of law, or if there has been intervening authority relevant to an issue in the case").

In *Martinez v. Ryan*, the United States Supreme Court established a "limited qualification" to the rule *in Coleman v. Thompson*, 501 U.S. at 752, that any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial counsel. *Martinez*, 132 S. Ct. at 1319. The *Martinez* Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. In describing its holding in *Martinez*, the United States Supreme Court stated that:

> [w]e . . . read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21); *see also Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the *Martinez* test to require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice"). To establish cause under *Martinez*, a petitioner must demonstrate (1) that his PCR counsel was

ineffective under *Strickland* and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez*, 132 S. Ct. at 1318.

### 3.     Discussion

Respondent acknowledges that Petitioner raised the issue on which this Ground is based in his pro se brief in the PCR appeal, but contends that it was not properly before the PCR appellate court for consideration because it was not preserved in the PCR proceedings. Respondent argues that because the PCR court did not explicitly discuss it in its order and PCR counsel did not file a Rule 59(e) motion to obtain the required findings of fact and conclusions of law on the issue, it was not preserved for further review in the PCR appellate proceedings. Therefore, according to Respondent, Petitioner's including this issue as a point in his pro se brief in the PCR appellate proceedings was ineffective to cure the procedural default. ECF No. 24 at 11-12. As Petitioner asserts, he did raise this issue in his original PCR application, App. 666-68, and discussed it briefly in his testimony at the PCR hearing, App. 701. However, the record shows that neither PCR counsel nor the State's PCR attorney asked trial counsel anything about his legal representation of Petitioner with regard to this particular jury instruction ("the witness-credibility instruction"). App. 704-11. Also, while the PCR court did expressly discuss and reject Petitioner's other claims of ineffective assistance of trial counsel that are now raised in this court as his Grounds One and Three and a different jury-instruction-related issue regarding "third-party guilt" that was raised in the amended PCR application, there is no reference whatsoever to a claim based on the witness-credibility instruction in the PCR court's final order. App. 718-19. Moreover, there is nothing in the record showing that PCR counsel filed a Rule 59(e) motion after receiving the final order requesting the PCR court to make findings and conclusions on the claim of ineffective assistance for failing to object to the witness-credibility instruction.

Petitioner does not dispute Respondent's allegation that no motion was filed. Therefore, under South Carolina law as expressed in the *Marler* opinion, this issue was not properly presented to the highest state court with authority to review it—the Supreme Court of South Carolina. Although Petitioner included this issue in his pro se petition for writ of certiorari seeking review of the PCR dismissal, the Supreme Court of South Carolina could not consider it because it was not preserved in the PCR court. Thus, the record in this case supports Respondent's contention that Petitioner's Ground Two was procedurally bypassed in state court when the issue on which it is based was not properly preserved in the PCR proceedings for review by the Supreme Court of South Carolina.

As stated previously, where a ground for habeas relief is procedurally bypassed, a habeas petitioner must show both acceptable cause for the default beyond his control and that he was prejudiced by the default. Petitioner's reliance on *Martinez v. Ryan* to argue that the default was caused by PCR counsel ineffectiveness requires a clear and convincing showing that PCR counsel's failure to raise this issue at the PCR hearing or to file a Rule 59(e) motion was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." *Sexton*, 679 F.3d at 1157; *see also Williams v. Taylor*, 529 U.S. at 391 ("the *Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); *Strickland v. Washington*, 466 U.S. at 687 (to demonstrate ineffective assistance of counsel, a petitioner must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result). The undersigned finds that Petitioner has not made the required showing that his PCR counsel was

ineffective under *Strickland* because the underlying ineffective-assistance-of-trial-counsel claim is not a substantial one.

The trial transcript showing the trial court's discussions with all counsel on the topic of jury instructions shows no reference to the witness-credibility instruction that Petitioner urges required objection from trial counsel. App. 552-57. Without objection by any party, the trial court indicated that it would give the "standard boilerplate material" and would also consider other special instructions that were proposed by trial counsel. App. 552. Trial counsel did request special instructions on armed robbery, alibi, witness bias, and eye-witness testimony, but neither he nor the State's attorney proposed any special instruction on how the jury should consider a witness's criminal convictions when determining how much credibility to assign to that witness's trial testimony. App. 553-57. Thus, it appears that the witness-credibility instruction that was given was a relatively minor part of the trial court's most extensive "standard boilerplate material" relating to how that jury should evaluate the testimonial evidence presented at trial. While the trial court's discussion of the entire topic of testimonial evidence takes up three pages of transcript, the instruction that Petitioner believes was objectionable covers one-half page. App. 621-24. The trial court gave the following witness-credibility charge:

> Where a person testifies and they have a past criminal record, they are competent to testify. However, a past record does not affect their ability, that is, they can testify. But you can consider any past criminal record of a witness in determining the credibility of that witness. That is, the believability. You've heard evidence that at least one of the witnesses, Ms. Laws I believe, had a prior conviction and Mr. Young, there was some testimony that he had been convicted of an offense. Now that evidence as to Mr. Young, like the evidence as to Ms. Laws, can only be used in judging believability of Mr. Young and for no other purposes. That is, you cannot use his past record as any evidence that he was involved in this in any degree whatsoever. It is not evidence as to the charges today. It is only allowed into evidence for your consideration in regarding what degree of believability to give to a witness.

App. 623-24. Although Petitioner asserts that this instruction directed the jury that it could not consider the prior convictions of one of the testifying witnesses, Ms. Laws, and could only consider his own convictions, ECF No. 28 at 7, the undersigned does agree with that interpretation. The trial court referred to both Petitioner and Ms. Laws in this instruction and specifically included Ms. Laws' testimony before the jury when he stated, "that evidence as to Mr. Young, *like the evidence as to Ms. Laws*, can only be used in judging believability of Mr. Young and for no other purposes." App. 623 (emphasis added). Although the trial court's wording could have been clearer with respect to its being applicable to the jury's consideration of the trial testimony of *both* Petitioner and Ms. Laws, it is sufficiently stated for this court to understand that it did not improperly limit the jury's consideration of past criminal conduct in assessing Ms. Laws' credibility. The instruction specifically includes a reference to Ms. Laws' "prior conviction" as well as to Petitioner's in the context of their "witness" testimony. Rather than prejudicing Petitioner, read completely and in context, the instruction provides significant benefit to him by informing the jury that it could not use his prior convictions as evidence of guilt of the charges before them. Additionally, the undersigned finds that the witness-credibility instruction provided the jury with a sufficiently clear statement of relevant South Carolina law. *See* S.C.R.E. 404 (b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); 609 (a), (b) (impeachment may be made by evidence of prior conviction). The record shows that trial counsel's failure to object to that instruction was not professionally unreasonable and it does not show that Petitioner was prejudiced by the instruction as given. Therefore, because Petitioner does not show that the bypassed issue was a "substantial" one or that PCR counsel was ineffective for failing to preserve this unsubstantial issue, his reliance on *Martinez v. Ryan* to excuse the procedural default of this Ground is unavailing. Accordingly, Respondent's Motion for Summary Judgment

should be granted as to Petitioner's Ground Two and Ground Two should be dismissed as procedurally barred.

### B.    Merits Analysis: Grounds One and Three

#### 1.    Ground One: Trial counsel was ineffective during trial when he failed to lodge a proper objection to preserve the issue of severance for appellate review, which denied the Applicant due process of law

##### a.    The Parties' Contentions

Respondent contends that the PCR court's determination on this issue was reasonable because Petitioner did not sustain his burden of proof where the record shows that Petitioner was not prejudiced by trial counsel's representation regardless of whether the point was properly preserved for direct appeal. Respondent contends that Petitioner was not entitled to have his trial severed from that of his co-defendant Mr. Porter under applicable South Carolina law because the record shows that their defenses were not antagonistic. ECF No. 24 at 13. Petitioner responds that summary judgment should not be granted because the PCR court's finding that trial counsel preserved this issue for appellate review directly conflicts with the appellate court's holding that it was not preserved. Petitioner contends that the conflicting conclusion deprived him to the right to have a state court rule on the severance issue. ECF No. 28 at 2-3, 4-5. Petitioner contends that the record shows that his and his pro se co-defendant's defenses were antagonistic because the co-defendant's questions to Petitioner during his trial testimony "indicated that the Petitioner had knowledge of the bank robbery or was in some way involved." *Id.* at 3-4.

##### b.    Discussion

As noted by both Respondent and Petitioner, the record shows that the PCR court's conclusion that trial counsel preserved the severance issue for appellate review directly conflicts with the South Carolina Court of Appeals' determination on direct appeal that he did not.

Petitioner's appellate counsel stated her view of the trial record relating to this issue in her brief

on direct appeal by stating:

> There were substantial reasons to sever the trial and for Young to be treated as an individual. There was no forensic evidence to connect him to the crime; there was no DNA and no fingerprints. The people in the bank could not identify the robbers. The co-defendants who testified against Young made plea bargains where they got only 6-8 years instead of a possible ninety years for Jones and a possible twenty-five for Laws.

> Young testified at his trial and so he was cross examined by his co-defendant Porter who represented himself at trial. However, Porter did not testify at the trial. Young was not able to subpoena Porter because he was on trial as well. Young could not call Porter to the stand as a witness in order to cross examine Porter.

> . . . .

> It is clear from the record that Young and Porter had antagonistic defenses. Each accused the other of committing the crime as seen through Porter's cross examination of Young. Porter asked Young if he did not hear Porter tell the other people in the car that they should have told him what they were going to do. Young said no. Young denied going to the bank.

ECF No. 24-4 at 8-9 (case and record citations omitted). The State answered, first arguing that

the appellate point based on the severance issue was not preserved for review:

> The motion was argued for several pages and the only input by [trial counsel] with regard to the motion to sever on behalf of Young was that Ms. Laws' defense would be prejudicial to his client and that he could not get a fair trial. The trial judge granted the motion to sever Laws' trial from the other two codefendants. He did not address at all whether Young's trial should be severed from Porter's. Trial counsel did not argue that Young's trial should be severed from Porter's. In fact, when he was asked for his remarks on the motion, trial counsel addressed only the propriety of severing Laws' trial from his client's trial. Trial counsel did not object to the trial court's ruling or even point out that they had not discussed whether Young and Porter should be tried separately.

> While initially trial counsel stated that he wished for Young's trial to be severed from all the others, this was neither argued to the judge, nor ruled upon by him. Trial counsel did not give any reasons why Young's trial should be severed from Porter's. The reasons put forth by Young in favor of severance were not argued before the trial judge and cannot be asserted for the first time on appeal. Therefore, this issue is not preserved for review.

ECF No. 24-5 at 11-12 (record citations and footnote omitted). The State also included alternative argument on the merits of the issue based on its contention that severance was not required because the record showed that Petitioner and his co-defendant did not present antagonistic defenses and "did [not] accuse each other of the bank robbery." *Id*. at 14, 15. The South Carolina Court of Appeals agreed with the State's position on lack of preservation and did not discuss the merits of this issue, stating:

> As to Young's severance motion: See <u>I'On, LLC v. Town of Mount Pleasant</u>, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (holding that in order for an issue to be preserved for appellate review, it must have first been raised to and ruled upon by the circuit court); <u>Tupper v. Dorchester County</u>, 326 S.C. 318, 324 n.4, 487 S.E.2d 187, 190 n.4 (1997) (stating an appellant cannot bootstrap an issue for appeal by way of a co-defendant's objection); <u>White v. Livingston</u>, 231 S.C. 301, 307, 98 S.E.2d 534, 537 (1957) (citation and quotation marks omitted) ("[A] party cannot, when a cause is brought up for appellate review, assume an attitude inconsistent with or different from that taken by him at the trial, and [. . .] the parties are restricted to the theory on which the cause was prosecuted or defended in the court below.").

ECF No. 24-6 at 2. Despite this appellate holding, when addressing Petitioner's PCR claim of ineffective assistance of trial counsel based on the alleged failure to preserve the severance issue, the PCR court made the following finding: "This Court finds that counsel made a motion for a severance, which was denied, and *properly preserved the record for appeal*." App. 718 (emphasis added). Respondent states in his Memorandum in Support of the Motion for Summary Judgment that this finding is "factually questionable as the precise issue raised on appeal was found not to be preserved for appeal." ECF No. 24 at 13. The PCR court did not provide any record citations as direct support for this conclusion, App. 718; however, review of the transcript of the PCR hearing sheds some light on the PCR court's conclusion. When Petitioner was testifying about his PCR issues on direct examination by PCR counsel, the following statements were made:

Q. Okay. And what other issued do you have to raise?

A. I had a[n] issue on trial counsel ineffective during trial when he failed to look at proper objection to preserve the issue for severage.

Q. Did you ask for a severage?

A. Severage. Yeah for appellate review.

Q. Okay.

A. It wasn't preserved.

***Q. It was preserved?***

***A. Right for appellate review.***

Q. All right. Next.

This was the extent of Petitioner's testimony on this issue at the hearing. App. 700-01 (emphasis added). Thereafter, trial counsel's PCR testimony on cross examination by the State's attorney regarding this issue was:

Q. Do you recall if you made a Motion to Sever, sever the trial from the codefendants?

A. I did.

Q. What was the result of that motion?

A. It was denied.

App. 709. While the PCR court could have relied on this testimony to support the quoted statement in its final order, the undersigned's review of the entire record, including the transcript of the pre-trial proceedings during which the severance issue was discussed, App. 21-38, shows that the conclusion is incorrect. The record as a whole discloses that trial counsel's assertion at the PCR hearing that the motion to sever he made was "denied" was not really true because the trial court actually granted the severance that was clearly requested under the motion it was considering as to co-defendant Laws. The awkwardness of PCR counsel's questioning of

29

Petitioner about the preservation issue possibly misled the PCR court as to the true state of the record insofar as the preservation of the severance issue is concerned.

The record as a whole supports the State's contentions on direct appeal that trial counsel did not specifically and clearly argue a motion to sever Petitioner's trial from the trial of his pro se co-defendant Mr. Porter. Instead, he relied primarily on another co-defendant's attorney to argue the motion and, when the trial court granted that co-defendant's motion but kept Petitioner's and Mr. Porter's trial a joint one, trial counsel did not object.[4] As a result, despite the PCR court's conclusion otherwise, trial counsel did not preserve for appellate review the issue of the propriety of Petitioner's joint trial. *See I'On, LLC v. Town of Mount Pleasant*, 526 S.E.2d at 724; *Tupper v. Dorchester County*, 487 S.E.2d at 190 n.4; *White v. Livingston*, 98 S.E.2d at 537.

The PCR court's conclusion on the preservation-of-error topic appears to have been made in connection with its determination that Petitioner did not sustain his burden of proof on the

---

[4] The severance motion that was argued to the trial court was filed by legal counsel for one of Petitioner's then-codefendants, Ms. Laws (who subsequently entered a guilty plea and became a witness in Petitioner's trial) and trial counsel told the trial court that he was joining that motion. App. 21. In response to the trial court's inquiry as to whose trial he wanted Petitioner's trial to be severed from, trial counsel did not specifically mention co-defendant Mr. Porter. Instead, he responded, "I think if your honor is inclined to severe [sic], I think it's appropriate to sever from all the defendants." App. 22. Then trial counsel stated "I feel like the defenses would be antagonistic," but he did not provide any specifics as to which defenses from which co-defendant he was referring. *Id*. As the argument on the motion proceeded with Ms. Laws' counsel taking the lead, the discussion focused on antagonism between Ms. Laws' proposed duress defense and Petitioner's potential ability to prevent the jury from considering his prior criminal convictions. App. 23-25, 29-31. While there is a brief reference to possible testimony from Ms. Laws that could include assertions that both Mr. Porter and Petitioner exerted pressure on her, App. 33, there is no discussion at all of any antagonism between Petitioner's and Mr. Porter's defenses. When asked for his "final remarks," trial counsel stated, "I would certainly think that that defense would be prejudicial to my client, highly prejudicial in fact, the jury would be hearing that my client had a history of violence, that he had convictions for armed robbery which is exactly what he's on trial here today. I don't see how my client could get a fair trial." App. 32. After hearing further argument from Ms. Laws' counsel and the State's attorney, the trial court granted the motion as to Ms. Laws stating, "out of an abundance of caution I'm going to severe [sic] Ms. Law's [sic] trial and have Mr. Young and Mr. Porter go forward." App. 39. Trial counsel did not object to the court's ruling or attempt to raise further argument.

*Strickland* first prong, 466 U.S. at 668, because "counsel's representation did not fall below an objective standard of reasonableness." App. 718. While that conclusion appears to be at least partially based on incorrect factual findings regarding trial counsel's professional performance at the severance hearing, the undersigned finds that it does not require habeas relief in this case because the PCR court did not end its analysis of the severance issue at *Strickland*'s first prong (reasonableness of representation under professional norms). The PCR court also found that Petitioner did not prove *Strickland*'s second prong: that he was prejudiced by the joint trial that took place after trial counsel attempted to argue that it should be severed. The PCR court based its prejudice analysis on the finding that Petitioner "and co-defendant Porter did not present mutually antagonistic defenses and did not accuse each other of committing the crime," App. 718-19, and the transcript of the trial proceedings and trial counsel's credible PCR testimony fully support this conclusion.[5]

---

[5] Trial counsel testified on this topic at the PCR hearing as follows:

> Q. Did the applicant and Mr. Porter, who was his codefendant, did they have opposing defenses?
>
> A. Not really. Mr. Young's defense was that he got out at Bojangles and that he was not involved in the robbery. Mr. Porter essentially his defense was that he also got out at a different location after Mr. Young did and that he was also not present at the robbery. The only thing that was antagonistic about their defense was Mr. Porter cross examined Mr. Young and ask[ed] him to affirm a conversation that was reported to have occurred in the car and Mr. Young stated that he did not hear that conversation. But it certainly wasn't a situation where Mr. Young was saying that Mr. Porter did it nor was it a situation where Mr. Porter was saying Mr. Young did it.
>
> In fact they were friends and had been for quite some time prior to this crime.
>
> Q. Do you recall if you were able to cross examine the two codefendants who testified at trial?
>
> A. Yes. I cross examined Ms. Laws and Mr. Jones both.

With respect to claims that joint trials allegedly should have been severed, the United States Supreme Court has indicated that "[t]here is a preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537 (1993); *see State v. Smith*, 597 S.E.2d 888, 892 (S.C. 2004) ("Criminal defendants . . . are not entitled to separate trials as a matter of right."). The Fourth Circuit Court of Appeals has held that a defendant seeking to sever his trial from a co-defendant's must "establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis,* 48 F.3d 763, 767 (4th Cir. 1995); *see also Zafiro*, 506 U.S. at 540 ("prejudice does not exist merely because a co-defendant has a better chance of acquittal if tried separately. . . ."); *Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir. 2000) (a defendant has no constitutional right to a severance unless he can make a strong showing of prejudice from a joint trial). Also, the Supreme Court of South Carolina has held that a criminal defendant seeking severance cannot show prejudice from merely being tried jointly with the person with whom he allegedly committed the charged crime. *State v. Rutledge,* 198 S.E.2d 250, 251 (S.C. 1973) ("The prejudice of which appellant complains was simply inherent in the facts of the case and not in the joint trial"). Instead, the court has held that severance of co-defendants' trials is not required unless "there is a serious risk that a joint trial would compromise a specific trial right of a co-defendant or prevent the jury from making a reliable judgment about a codefendants's guilt." *State v. Dennis*, 523 S.E.2d 173, 176 (S.C. 1999). The same court later held that severance is not required unless it can be shown that co-defendants' separate defenses are such that one defendant's assertions would be inconsistent with the other's innocence*, e.g.*, that their defenses

---

App. 709-10. The trial transcript supports this testimony because it shows that both Petitioner and his co-defendant claimed that he was not at the bank where the robbery took place, and neither ever testified that the other committed the robbery. App. 503-37.

are antagonistic. *State v. Cope*, 748 S.E.2d 194, 206 (S.C. 2013). Additionally, this court has held that a petitioner's contention that his trial counsel was ineffective for failing to move for a severance because the joint trial prevented him from cross examining a non-testifying co-defendant was insufficient to satisfy the *Strickland* prejudice prong. *See Zeigler v. Bush*, No. 9:14-cv-01162-JMC, 2015 WL 5604154, at *18-19 (D.S.C. Sept. 22, 2015) (no prejudice shown from lack of motion to sever resulting in inability to cross examine non-testifying co-defendant where no evidence that co-defendant's confession expressly implicated the petitioner) (citing *State v. Spears,* 713 S.E.2d 324, 329 (S.C. Ct. App. 2011), which cites to *Bruton v. United States,* 391 U.S. 123, 135-37 (1968)); *see also Joyner v. Angelone*, No. CIV.A. 01-1189-AM, 2002 WL 32389825, at *8 (E.D. Va. June 14, 2002) (no prejudice shown from joint trial with co-defendants who had prior felony convictions).

In this case, review of the record as a whole in light of the applicable law cited above shows that Petitioner has not carried his burden of showing that the PCR court's rejection of his ineffective-assistance claim was unreasonable because he has not shown any prejudice from trial counsel's failure to preserve for state court appellate consideration the issue of whether his trial should have been severed from his co-defendant Mr. Porter. Petitioner did not prove to the PCR court—and he has not presented anything to this court—that would require it to find that any South Carolina state court, whether trial or appellate, would have ruled that he was entitled to a severance of his trial from his co-defendant's. The record supports trial counsel's PCR testimony that Petitioner's and the co-defendant's defenses were not antagonistic. Petitioner's assertions in this court that his pro se co-defendant's "manner of cross-examining . . . indicated that the Petitioner had knowledge of the bank robbery or was in some way involved," ECF No. 28 at 4, are not borne out by the trial transcript. Moreover, his allegations of inability to cross examine

the co-defendant during the joint trial because of his pro se and non-testifying status do not rise to the level of a fair-trial violation or show the requisite prejudice under *Strickland*. Thus, in absence of the requisite showing of prejudice from the alleged ineffective assistance of counsel, the undersigned finds that the PCR court's decision on the issue underlying Petitioner's Ground One was not unreasonable. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

> 2.    Ground Three: Counsel was ineffective during trial for failing to object to the improper conduct of the solicitor which consisted of poisoning the minds of the jurors in his opening statements, bolstering of State's witnesses and making improper remarks about the Petitioner and his co-defendants in his closing argument, counsel was also ineffective for failing to move for curative instructions or a mistrial, which denied the Petitioner due process of law

> a.    The Parties' Contentions

Respondent contends that the PCR court properly applied the *Strickland* standards to the claims underlying this Ground because the prosecutorial comments that Petitioner asserts required legal challenge were not objectionable and Petitioner suffered no prejudice from the lack of objection, particularly where the trial evidence against Petitioner was "overwhelming." ECF 24 at 15-16. Petitioner responds that the prosecutor's conduct, coupled with his joint trial with a pro se co-defendant shows that he "did not receive a fair trial." ECF No. 28 at 9. Petitioner contends that the PCR court's decision was unreasonable because there was no evidence presented at trial that supported the prosecutor's opening argument about Petitioner and his co-defendant "getting ready to go to work . . ." to rob a bank, which was formulated only to "'poison' the minds of jurors." *Id*. at 10, 11. Petitioner also contends that the prosecutor's closing argument improperly vouched for the credibility of his former co-defendants who pleaded guilty and then testified against him and inappropriately and irrelevantly characterized him and his co-

defendant as "clowns." *Id.* at 11. Petitioner denies that the trial evidence against him was overwhelming because there was no evidence placing him at the scene of the robbery. *Id.* at 12.

b.    Discussion

The prosecutorial comments that Petitioner claimed at PCR and now before this court should have drawn an objection, request for curative instruction, and motion for mistrial from trial counsel are quoted below, directly from the trial transcript.[6]

From opening argument:

> Meanwhile up in Charlotte, miles away, Mr. Kenneth Young and Johnell Porter, these two guys right here, this is Mr. Porter and this is Mr. Young, they were getting ready to go to work too. They were getting dressed, getting their clothes ready, getting their things together for their job. Oddly enough that day they were going to go work at the Bank of York too, but the Bank of York didn't hire Mr. Young and Mr. Porter. They hired Mrs. Harris, but they didn't hire them. They were freelancing. They decided they were going to volunteer there to come and make a withdrawal and the clothes they were getting ready were dark jeans, a dark sweat shirt with a hoodie, ski masks, and things that they were getting to take with them: gloves, a .38 pistol, and a Smith and Wesson semi-automatic handgun.

App. 104-05.

Direct examination of Ms. Laws:

> Q    And have you plead guilty to bank robbery?
>
> A    Yes, sir.
>
> Q    Ms. Laws, when you plead guilty did you agree to testify against some folks?

---

[6] Petitioner cites to "App. pp. 671-676" after his argument relating to the alleged bolstering and improper-characterization allegedly done in the prosecutor's closing argument. ECF No. 28 at 11. However, those pages in the record before this court are not pages from the trial transcript. Instead, those pages are part of Petitioner's Memorandum in support of his PCR application that assert improper bolstering and quote portions of the prosecutor's direct examination of two of the witnesses, Petitioner's former co-defendants Ms. Laws and Mr. Jones, both of whom pleaded guilty before the trial began and then testified against Petitioner, and a portion of the beginning of the prosecution's closing argument. Rather than copy the cited portions of the PCR application, the undersigned quotes directly from the official trial transcript.

A       Yes, sir.

Q       Who did you agree to testify against?

A       Kenneth Young and Johnell Porter.

Q       And will you testify truthfully?

A       Yes, sir.

Q       If you testify truthfully against them, what reward do you get, what deal do you get?

A       (no response.)

Q       What sentence will you get?

A       6 to 8 years prison time.

App. 312-13.

Q       All right. Ms. Laws, have you told the truth?

A       Yes, sir.

App. 323.

Direct Examination of Mr. Jones:

Q       Mr. Jones, have you told the truth today?

A       Yes, sir.

App. 375.

From closing argument:

Oh, I didn't even mention the fact that the two other clowns from the car came in here and told that you they were guilty and that they did in fact go into the bank, Mr. Jones did and that Ms. Laws drove them there, and that they conspired and they planned and he wore a ski mask and he carried the bag in and he's guilty and he said he was guilty and he's going to prison and he knows he's going prison [sic] and so does Ms. Laws and they did it too they said.

I didn't mention that that was another good little piece of evidence that we had, and Mr. Jones, he said that from the beginning before there was any heat. He didn't even know what his charges were going to be. He didn't know whether he

would have a lawyer or when he would get to South Carolina, what would happen when he got there, how much time he was looking at, who the prosecutors were going to be or what kind of offer they were going to make, he just said, I went in there and I told them the truth and no matter how much Mr. Porter tried to make him say, now you were high on Lortab, you didn't really know what you were doing, no, Grandpa I really did. I did. I knew what I was doing. He knew what he was doing the whole time.

App. 593-94 (speaking about witness Mr. Jones' testimony).

She was scared. She has a criminal history but she had never done any time in jail. She's got minor stuff and she knew that she had moved from, you know, minor league baseball to the major leagues. Bank robbery is serious crime. Forgery check, stealing money from your employer, minor. Going into a bank with ski masks and guns and macing people and loading up $18,000 worth of cash, stuffing them into the vault and closing the door — major. She said, I'm in real trouble now, so her statement was very self-protective. Judge her testimony based on how she was on the stand though, consider that too. She was pretty forthright. She wasn't happy to be here, who can blame her, her position right now is pretty bad. She's going to prison. She knows it. She's not happy about being here, but she told the truth and it didn't really change a whole lot over time.

App. 599 (speaking about witness Ms. Laws' testimony). The PCR court decided that trial counsel was not ineffective for failing to object to the prosecutorial comments based on a conclusion that they were not objectionable. App. 719.

The United States Supreme Court has held that where a criminal defendant asserts constitutional violations arising from prosecutorial comments, a reviewing court must consider whether the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The Fourth Circuit has held that a reviewing court must consider four factors in determining whether prosecutorial argument rises to the level of a denial of due process: 1) the degree to which remarks misled the jury and prejudiced the defendant; 2) whether the remarks were isolated or extensive; 3) whether absent the remarks competent evidence established guilt; and 4) whether comments were deliberately placed before the jury to

divert attention to extraneous matters. *United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir. 1983) (citing *United States v. Karas*, 624 F.2d 500 (4th Cir. 1980)). Additionally, the Fourth Circuit has held that, while it is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses during arguments to the jury, *see United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997), argument based on the prosecutor's interpretation of the trial evidence that would support the credibility of a witness is not impermissible vouching. *United States v. Celestine*, 43 F. App'x 586, 597 (4th Cir. 2002) ("Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of the witness.") (citing to *United States v. Sanchez*). Applying the *Darden* standard, the South Carolina Supreme Court found no reversible error in a prosecutor's equating drug dealers to cockroaches. *Randall v. State*, 591 S.E.2d 608 (S.C. 2004).

Although the PCR court did not explicitly discuss it in its final order,[7] review of the challenged portion of the prosecutor's opening argument demonstrates that equating Petitioner's preparations for the day of the bank robbery with getting ready to go to work was a somewhat dramatic or creative part of the narrative the prosecutor used to present his version of the facts to the jury. Furthermore, in the context of the entire trial, it cannot be said that the references to Petitioner's getting ready for work were so prejudicial as to require a new trial. *See United States v. Leftwich*, 461 F.2d 586, 590 (3d Cir. 1972) (finding that "improprieties of argument by counsel to the jury do not call for a new trial unless they are so gross as to probably prejudice the defendant"); *see also Daniels v. Hinkle*, No. 3:11CV675, 2012 WL 2792199, at 4 (E.D. Va. July 9, 2012) (citing *United States v. Homer*, 545 F.3d 864, 867 (3d Cir. 1976) and rejecting an opening-statement-related habeas ground for lack of a showing of prejudice). Neither those

---

[7] The only prosecutorial comment that the PCR court mentioned explicitly in the factual summary portion of its final order was the claim of impropriety in the prosecutor's labeling Petitioner's former co-defendants as "clowns." App. 716.

opening comments nor the prosecutor's brief reference in closing to Petitioner's former co-defendants who testified against him as "clowns" could reasonably be found to have misled the jury or to have introduced extraneous matter into the trial. Petitioner did not prove in the PCR proceedings and has not proved in this court that he was prejudiced by these comments, particularly in light of the substantial evidence of guilt that the State presented against Petitioner at trial in the form of direct testimony from his former co-defendants Laws and Jones and evidence showing that Petitioner was apprehended in the same car with those former co-defendants and with the money that was stolen from the bank. *See United States v. Harrison*, 716 F.2d at 1050. Moreover, in light of the South Carolina Supreme Court's *Randall* opinion, the undersigned finds that it is highly unlikely that any South Carolina court would hold the prosecutor's reference to Petitioner's former co-defendants as "clowns" unconstitutional or otherwise improper. Additionally, although the PCR court did not explicitly address a claim of credibility bolstering, Petitioner has not shown how the prosecutor's brief direct-examination questions to the witnesses about whether they would testify truthfully, or the relatively brief portions of his closing argument interpreting trial evidence as supportive of the truthfulness of their testimony, could be considered unconstitutional bolstering of the witnesses' credibility. The prosecutor's direct-examination questions cannot be interpreted as a statement of the prosecutor's personal belief in the witnesses' truthfulness. *See United States v. Henderson*, 717 F.2d 135, 136-37 (4th Cir. 1983) (no improper bolstering where prosecutor questioned witness on direct examination about a plea-bargain-related promise to testify truthfully). Moreover, the two quoted portions of the prosecution's closing argument are just that—argument based on the facts disclosed by evidence presented at the trial, not impermissible vouching for or bolstering a witness's credibility. The solicitor did not say that he, personally, believed that either Ms. Laws

or Mr. Jones testified truthfully, nor did he attempt to mislead the jury. Instead, he explained how the evidence that came in about the witnesses' personal involvement in the charged crimes supported their own testimony wherein they, themselves, told the jury that they were testifying truthfully. *See United States v. Celestine*, 43 F. App'x at 587. Those arguments were not excessive in relation to the prosecutor's full closing argument, they were not a focus of the trial, and they did not prejudice Petitioner in light of the significant evidence of his guilt produced during the trial. Thus, the record and applicable law show that the PCR court's rejection of the ineffective-assistance-of-counsel claim underlying Petitioner's Ground Three was reasonable. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Three.

IV.    Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 23, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

January 28, 2016                                          Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).